Hillsborough, }
  June, 1898. }

### PORELL *v.* CAVANAUGH *& a.*

Evidence of the size of a package of money and the denominations of the bills composing it is competent on the question of the possessor's financial ability.

Where there is an exercise of dominion over property in repudiation of and inconsistent with the owner's right, he may maintain trover without a previous demand.

On the question whether an instrument was signed at the same time and place by the party executing it and one whose name appears as a witness, evidence that different inks were used in the signatures is competent.

An innocent purchaser of a chattel for a valuable consideration, from a fraudulent vendee, acquires a valid title.

TROVER, for a horse. Trial by jury and verdict for the plaintiff. In May, 1896, the defendants entered into a contract with William P. Burke for the sale of a horse to him for his son Octave, for the sum of $2,500, payable in brick at five dollars per thousand, to be delivered on the defendants' order upon the cars at Epping. Shortly after the contract of sale, the horse was delivered by the defendants to Octave, who kept him until the last of the following July, when he passed into the possession of the plaintiff.

The plaintiff's evidence tended to show that the sale of the horse to Burke by the defendants was without condition and without fraud, and that Octave sold him in July to the plaintiff

for $1,700, with no notice of any defect in the vendor's title; that in September following the defendants obtained possession of the horse from the plaintiff by falsely pretending that they had a paper executed by Burke showing that the title to the horse never passed to Burke, but remained in them.

The defendants' evidence tended to show that the sale to Burke was conditional, and that a paper was executed by him and delivered to them, providing that the title to the horse was to remain in the defendants until the bricks were delivered, which was never done; that Burke when he bargained for the horse was insolvent, as he well knew, and that he did not intend to pay for him; and that the plaintiff never became the purchaser of the horse, but conspired with Octave to conceal him so that the defendants could not reclaim him.

As bearing on the plaintiff's financial ability to pay cash for so valuable a horse, one of the plaintiff's witnesses, subject to the defendants' exception, was allowed to testify that a pile of bills which he had seen in the plaintiff's possession was four or five inches thick, and that the bills on the top of the package were fives, tens, and probably twenties.

At the close of the plaintiff's evidence, the defendants' motion for a nonsuit, on the ground that there was no evidence of a demand, was denied, subject to exception.

The defendants introduced evidence tending to show that Burke signed the paper providing for a conditional sale of the horse, at the desk of one of the defendants, at their office in Boston, in May, 1896, and that it was signed at the same time by one Hunt, as a witness. The plaintiff claimed that Burke never signed the paper in Boston at that time, but was induced by the defendants to sign it at a later date in Canada, and that Burke's signature was afterward witnessed by Hunt in Boston. In support of his contention on this point, the plaintiff was allowed, subject to the defendants' exception, to introduce the testimony of experts that the ink used by Burke was different from the ink used by Hunt.

The court, among other things, in substance charged the jury that if Burke by fraud had purchased the horse from the defendants and afterwards sold him to the plaintiff, who took him without knowledge of any fraud and paying therefor at the time a valuable consideration, the plaintiff would hold the horse against the claim of the defendants. The defendants excepted to these instructions, and also to the refusal of the court to give the following: "If Burke obtained this horse by fraud, he could not give the plaintiff a good title unless the defendants were guilty of some laches after they had knowledge of the fraud."

*Burnham, Brown & Warren* and *Isaac W. Smith,* for the plaintiff.

*Eastman, Young & O'Neill* and *Drury & Peaslee*, for the defendants.

WALLACE, J. The evidence of one of the witnesses that he saw a pile of bills in the plaintiff's possession four or five inches thick, some of the top ones being fives, tens, and probably twenties, was competent on the question of the plaintiff's financial ability to buy so valuable a horse. This testimony was not mere conjecture, but was the statement of facts which would furnish the jury some assistance in determining whether the plaintiff had the money to pay for the horse, as he claimed he did.

The motion for a nonsuit was properly denied, although there was no evidence of a demand upon the defendants. A demand and a refusal are only evidence of a conversion, and a demand is only necessary when the circumstances as shown in evidence do not of themselves amount to an actual conversion. "To constitute a conversion of chattels, there must be some exercise of dominion over the property in repudiation of, or inconsistent with, the owner's right." *Evans* v. *Mason*, 64 N. H. 98; *Baker* v. *Beers*, 64 N. H. 102. No demand was necessary here, because the defendants actually converted the horse. They took him from the plaintiff and held possession of him, claiming him as their own property. They exercised dominion over him in exclusion and defiance of the plaintiff's rights.

The evidence of the experts that the ink used by Burke in signing his name to the instrument, which the defendants claimed was the memorandum of the conditional sale signed by Burke, was different from that used by the witness Hunt, was properly admitted in support of the plaintiff's contention that Burke was induced to and did sign it at a subsequent date in Canada, and as rebutting the defendants' claim that it was executed in Boston, in the presence of Hunt. If both the parties had signed the paper at the same desk at the same time, it is probable that both would have used the same ink. The fact that they used different inks was competent for the jury to consider in determining who was right in regard to this question.

There was no error in the instructions given to the jury, nor in the refusal to give those which the defendants requested. If Burke purchased the horse by fraud from the defendants, the contract was voidable at the election of the vendors. They were entitled to affirm it, or to rescind it and recover the horse or its value from the fraudulent vendee. But in the meantime, if the vendee, while he was clothed with the possession and title of the property, sold it for a valuable consideration to one with no notice of the fraud, such purchaser would obtain a valid title. The innocent purchaser has a right to rely upon the apparent ownership which the vendor has conferred upon the fraudulent

vendee and acquire from him a title which is good against the original vendor. *Bradley* v. *Obear*, 10 N. H. 477, 479; *Kingsbury* v. *Smith*, 13 N. H. 109; *Farley* v. *Lincoln*, 51 N. H. 577, 581; *Sleeper* v. *Davis*, 64 N. H. 59; *Rowley* v. *Bigelow*, 12 Pick. 307; Benj. Sales, ss. 433, 443. The instructions were in accordance with this principle.

                                                        *Exceptions overruled.*

PIKE and PEASLEE, JJ., did not sit: the others concurred.