111 N.J. Super. 419 (1970)
268 A.2d 364
FRANK B. ZUPPA, PLAINTIFF,
v.
HERTZ CORPORATION, DEFENDANT.
Superior Court of New Jersey, District Court, Essex County.
Decided June 18, 1970.
*420 Mr. Ralph N. Capone for plaintiff (Messrs Giannone & Capone, attorneys).
Mr. Edward A. Colligan for defendant (Mr. Edward Krowen, attorney).
MARZULLI, P.J.D.C.
In this action plaintiff Frank B. Zuppa seeks recovery against Hertz Corporation (Hertz) *421 under the terms of a mandatory insurance policy, as specified in N.J.S.A. 45:21-3.
The material facts evinced during the course of the trial are not in dispute. On December 17, 1968 James Jackson entered one of Hertz's local offices at Newark Airport, Newark, New Jersey, and requested the use of an automobile. At the time Jackson had in his possession a credit card issued by Air Travel Co. to one William B. King. Jackson filled out the application card in the name of King, and forged King's signature, using King's credit card.
King had no knowledge of this rental transaction by Jackson, did not consent to his impersonation, and had reported the credit card as lost or stolen as of December 7, 1968. This report was confirmed in writing by King to Air Travel Co. on December 9, 1968.
Hertz, relying on the representations as set forth in the application form and being unaware of the perpetrated fraud, furnished an automobile to Jackson. The only investigation made by Hertz before renting the automobile was to check the monthly cancellation list; no other precautionary procedures were established by the credit card company at that time. The rental agreement provided that the motor vehicle was to be returned on December 31, 1968.
Jackson did not return the automobile on the return date. On January 7, 1969 Jackson was driving the Hertz motor vehicle on Exit Road at its intersection with Port Street, Newark, New Jersey, when he proceeded through a red light and struck plaintiff's automobile.
Thereafter plaintiff instituted suit against Hertz as owner and Jackson as operator, and recovered a judgment in the amount of $1,700 against Jackson alone. Jackson has since absconded, his whereabouts being unknown.
The nonliability of Hertz as owner was determined in favor of Hertz in the prior suit. Judge Del Tufo, presiding in that matter, determined that Jackson came into possession wrongfully, and that there was no evidence as to agency or negligence by Hertz. This ruling is consonant *422 with our current law. Doran v. Thomsen, 74 N.J.L. 445 (Sup. Ct. 1907); Maurer v. Brown, 106 N.J.L. 284 (Sup. Ct. 1930); see also McChord, "Liability of the Bailor for the Negligence of the Bailee of Motor Vehicles," 15 Geo. L.J. 402 (1927).
Plaintiff now seeks recovery against Hertz as self-insurer. Under our Compulsory Motor Vehicle Insurance Act, every owner of rented and leased motor vehicles must either file with the clerk of the municipality a copy of a motor vehicle insurance policy, N.J.S.A. 45:21-2, or, where the assets of the owner are sufficient, as in the present case, become a self-insurer pursuant to N.J.S.A. 45:21-8. The statute also provides the terms and provisions of such insurance, N.J.S.A. 45:21-3; these terms and provisions are mandatory and may not be avoided. Cf. Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300 (1956).
The question for this court to determine is whether Jackson was insured by Hertz at the time of the accident under N.J.S.A. 45:21-3; i.e, whether Jackson was a "bailee" within the meaning and intent of the statute. N.J.S.A. 45:21-3 provides in pertinent part:
Such policy of insurance * * * shall provide for the payment * * * of any final judgment recovered by any person on account of ownership, maintenance and use of such motor vehicle by either the owner or the lessee or bailee, his agent or servant, or any fault in respect thereto, and shall be for the benefit of any person suffering loss, damage or injury as aforesaid. [Emphasis added]
Plaintiff argues that this statute (and by analogy, its counterpart under the Motor Vehicle Financial Responsibility Law, N.J.S.A. 39:6-23 et seq.) represents legislative adoption of a public policy looking toward the collectability of damages. He maintains that the word bailment should be broadly and liberally construed so as to effectuate coverage for the benefit of innocent third parties. He further argues that since the contract for hire was induced by a misrepresentation as to the identity of the person, commonly known as *423 fraud in the inducement, the contract for hire was only voidable. He continues this argument by saying that the insurer may not now, on the ground of fraud or misrepresentation relating to the inception of the contract, retrospectively avoid coverage so as to escape liability to the claimant. These arguments are unpersuasive.
It is commonly stated that in the absence of a legislative intent to the contrary, legal terms in a statute are presumed to have been used in their legal sense. N.J.S.A. 1:1-1; see also River Development Corp. v Liberty Corp., 45 N.J. Super. 445 (Ch. Div. 1957), aff'd 51 N.J. Super. 447 (App. Div. 1958), aff'd 29 N.J. 239 (1959).
Except in the case of quasi-bailments, a bailment is essentially a consensual transaction. Lawful possession of the property is generally admitted to be one of the requisites of a bailment. It is correctly defined as the rightful possession of goods by one who is not the owner. 9 Williston, Contracts (3 ed. 1967), § 1030 at 875; State v. Carr, 118 N.J.L. 233 (E. & A. 1937). This is commonly expressed by saying that a bailment requires delivery. Gilson v. Pennsylvania R.R. Co., 86 N.J.L. 446 (Sup. Ct. 1914), aff'd 87 N.J.L. 690 (E. & A. 1915). It is the element of lawful possession, however created, and the duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based upon contract in the ordinary sense or not. Laidlaw, "Principles of Bailments," 16 Cornell L.Q. 286 (1931). A bailment cannot be built upon fraud but must be predicated upon a lawful transaction voluntarily entered into by both parties. State v. Carr, supra; see also 8 Am. Jur.2d, Bailments, § 48, at 954 (1963), 8 C.J.S. Bailments § 17, at 367 (1962).
Jackson's actions, which amount to a conversion, see generally Prosser, Torts (3 ed. 1964), § 15, at 84; 1 Harper & James, The Law of Torts, § 2.16, at 142 (1956); see also 8 Am. Jur.2d, Bailments, § 48, at 954 (1963), also constitute a criminal offense for which he was tried and convicted. It cannot be said, therefore, that the transaction perpetrated *424 by Jackson amounted to a bailment within the contemplation and intent of our Legislature when it enacted our Compulsory Motor Vehicle Insurance Act. It would be quite a different result if our Legislature imposed direct and absolute liability on the owner of the rented motor vehicles. See Schimek v. Gibb Truck Rental Agency, supra.
Moreover, analogous cases in other states rule against recovery in like situations. Gallopin v. Continental Cas. Co., 290 Ill. App. 8, 7 N.E.2d 771 (App. Ct. 1937); Potts v. Farmers' Mut. Automobile Ins. Co., 233 Wis. 313, 289 N.W. 606 (Sup. Ct. 1940); see also, 7 Appleman, Insurance Law & Practice, § 4453, at 489 (1962); 6 Blashfield, Cyclopedia of Automobile Law and Practice, § 3945, at 626-628 (1945); 12 Couch, Insurance (2 ed. 1964), § 45:115-6, at 186-187; but cf. General Cas. & Sur. Co., v. Stevens, 41 Ohio App. 581, 180 N.E. 271 (Ct. App. 1931).
Nor can it be successfully argued by analogy that an insurer, given similar facts as in the instant case, would have been unable to avoid liability under our Motor Vehicle Security Responsibility Law. N.J.S.A. 39:6-23 et seq. As stated by our Supreme Court in Small v. Schuncke, 42 N.J. 407 (1964):
* * * we hold that Weidel [named insured] gave Wagner [nephew] permission to "use" the car when he entrusted the latter with possession and requested that he operate the car to perform the various errands. Accordingly, Wagner and Schuncke [driver] are additionally insureds * * * unless their use of the car at the time of the accident constituted "theft or the like." [at 414-415; emphasis added]
In conclusion, it is clear that the plain design of N.J.S.A. 45:21-1 et seq. is to provide insurance coverage for the benefit of any person (with certain exceptions not relevant here) who suffers injuries or sustains property damage as a result of liability imposed by law on the bailor of a hired motor vehicle or a bailee, or his agent or servant, and that the statute does not purport to make available to a judgment *425 creditor the proceeds of a liability policy unless the judgment debtor falls within the definition of one assured under the terms provided therein. To hold otherwise would be to force the insurance company to insure a thief.
Accordingly, judgment is for defendant.