590 So.2d 929 (1990)
Billy JACKSON, By and Through his mother and natural guardian Henrietta WHITAKER, and Henrietta Whitaker, individually, Appellants,
v.
The HERTZ CORPORATION, Appellee.
No. 88-2261.
District Court of Appeal of Florida, Third District.
December 4, 1990.
On Rehearing December 24, 1991.
*930 Horton, Perse & Ginsberg and Jay Rothlein and Arnold Ginsberg, Miami, for appellants.
Roland Gomez and Steven A. Edelstein, Miami Lakes, for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
On Rehearing En Banc December 24, 1991.
JORGENSON, Judge.
Billy Jackson and his mother, Henrietta Whitaker, appeal from a final judgment in favor of the Hertz Corporation in an action for negligence. We affirm.
On February 5, 1985, Hertz entered into a two-day rental agreement with a woman purporting to be Linda Major, and her companion, Lawrence King. The woman presented Hertz with a Visa credit card issued in Linda Major's name. Mr. King's driver's license number, the license expiration date, the issuing state, and King's age were entered on the additional authorized operator attachment of the rental agreement. Additionally, King's driver's license number and the license expiration date were entered on the front of the Hertz rental agreement. No separate driver's license information was written on the rental agreement for the woman identifying herself as Linda Major. Before relinquishing possession of the vehicle, Hertz ran a credit check on the Visa card presented. Upon receipt of a favorable credit check, Hertz released the vehicle to the above individuals.
Hertz was informed on February 17, 1985, by Metro-Dade Police that the Hertz-owned vehicle had been fraudulently leased with a stolen credit card and that the woman who gave her name as Linda Major was an imposter. Thereafter, on February 26, 1985, and March 1, 1985, respectively, Hertz sent certified letters[1] to both renters demanding the return of the automobile. On March 31, 1985, both letters were returned to Hertz as undeliverable. On April 5, 1985, Hertz reported the vehicle as stolen to the police. Eleven days after the Hertz vehicle was reported stolen, the vehicle, operated by Christopher Harris, an alleged participant in the fraud, was involved in an accident, injuring Billy Jackson.
*931 Billy and his mother brought this action against Hertz as the owner of the vehicle involved in the accident, alleging that Hertz was liable for Billy's damages because its employees had negligently entrusted the car to a person who (1) did not present a valid driver's license; (2) obtained the vehicle by fraud, and (3) negligently operated the vehicle causing the accident. After the jury deadlocked on the issue of liability, the trial court directed a verdict for Hertz.

NEGLIGENT ENTRUSTMENT
Although the Hertz agent who handled the rental transaction failed to note on the rental agreement the relevant driver's license information, if such information existed, for the woman purporting to be Linda Major, Hertz's handling of the transaction as a matter of law did not constitute negligence. At trial, Hertz presented credible testimony establishing a common industry practice permitting rental to a person with a credit card but no driver's license when accompanied by someone with a valid driver's license. Hertz further established that its policy and procedure manuals do not prohibit this particular rental procedure. Based on the evidence presented, even if the woman posing as Linda Major did not possess a valid driver's license, Hertz's handling of the transaction was not negligent.
We likewise conclude that Hertz was not negligent under the terms of section 322.38(2), Florida Statutes (1985).[2] There is no evidence that a rental car company has ever been charged with a violation of section 322.38(2) in a case where, as here, rental was made to a person with a credit card but no driver's license who was accompanied by someone with a valid license. Moreover, based on the uncontroverted testimony regarding a common rental industry practice and because a valid driver's license was presented and inspected, we conclude that Hertz complied with section 322.38(2) and was not negligent.[3]

NEGLIGENT DELAY IN REGAINING POSSESSION
Hertz also acted reasonably upon learning that its vehicle had been fraudulently obtained. Nine days after learning of the fraud, Hertz, in compliance with Metro Dade police procedures, sent two certified letters to "Linda Major" and Lawrence King demanding return of its vehicle. Five days after the last attempted delivery by the post office, Hertz reported the vehicle as stolen to the police.
Contrary to the dissent's opinion, there was no evidence that Hertz was guilty of inaction upon notification by Metro Dade Police that the Hertz vehicle had been fraudulently obtained. We cannot find Hertz negligent for delay in regaining possession when Hertz was merely following Metro Dade rules requiring rental companies to refrain from reporting vehicles as stolen until after certified letters are sent to the renters demanding return of the vehicle. On the contrary, we conclude that Hertz acted reasonably and with due diligence to regain possession of its vehicle.

*932 DANGEROUS INSTRUMENTALITY DOCTRINE
Hertz was not liable under the dangerous instrumentality doctrine. There is no dispute that the owner of the vehicle must voluntarily relinquish possession of its vehicle in order to be held liable under the dangerous instrumentality doctrine. In Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 837 (Fla. 1959), the Florida Supreme Court emphasized that "the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent ... [O]nly in a situation where the vehicle is not in operation pursuant to his authority, or where he has in fact been deprived of the incidents of ownership, can such an owner escape responsibility." In Susco, there was no doubt that the automobile was being used with the owner's consent. Here, however, it is undisputed that Hertz's consent to rent the vehicle was procured by fraud, through the use of a stolen credit card. This fraud vitiated Hertz's consent from the outset. See Padgett v. State, 82 So.2d 372 (Fla. 1955) (where owner's consent procured by false pretense with intent to defraud, fraud vitiated owner's consent and taking amounted to larceny); State v. Oates, 330 So.2d 554 (Fla. 4th DCA 1976) (same). Because the plaintiff has the burden of proving that possession of the vehicle was relinquished with the owner's consent, Slitkin v. Avis Rent-a-Car Sys., 382 So.2d 883 (Fla. 3d DCA 1980), and because plaintiffs here have not met this burden, Hertz, as a matter of law, is relieved from liability for the negligent operation of its vehicle under the dangerous instrumentality doctrine.
Even if Hertz had voluntarily relinquished possession of its vehicle, Hertz is still relieved from liability under the dangerous instrumentality doctrine. The Florida Supreme Court in Susco held that "when control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse." Susco, 112 So.2d at 835-836. The events that occurred here clearly constituted a "species of conversion or theft" within the meaning of Susco, both initially by the use of a stolen credit card to obtain possession[4] and, subsequently, when the vehicle was not returned to Hertz after demand for its return had been made. See Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157 (Fla. 3d DCA 1984) (where person having right to possession of property makes demand for its return and property is not relinquished, conversion has occurred, and it is not necessary to prove demand and refusal where the act complained of amounts to conversion regardless of whether demand is made); United States v. Edwards, 576 F.2d 1152 (5th Cir.1978) (vehicle rented with stolen credit card and not returned to rental agency exceeded scope of rental agreement and constituted interstate transportation of stolen vehicle). Under these circumstances, Hertz cannot be liable.
Appellants' reliance on Tillman Chevrolet Co. v. Moore, 175 So.2d 794 (Fla. 1st DCA 1965), is misplaced. In Tillman, the court found that the owner of an automobile dealership was negligent in permitting a "prospective buyer" who developed to be a thief to take sole possession of a vehicle for sale to drive it a limited distance. Id. at 795. The salesman's negligence in Tillman was critical to the court's finding of liability. Second, in Tillman, the dealer was in the business of selling, rather than *933 renting, automobiles. In contrast to a rental agreement in which there is a formerly executed contract supported by consideration and reliance by the rental company on the validity of the renter's credit, there is no such contractual relationship in the case of a "test drive" by a prospective customer. Lastly, Tillman omitted any reference to the Florida Supreme Court's decision in Susco which established the foundation for determining whether the owner of a vehicle can be held liable for its negligent use by a third party. Tillman, therefore, does not control this case.
Other jurisdictions have held that rental and leasing companies were not liable for injuries sustained by third persons from the negligent use of the renter/lessor's vehicle when the vehicle is obtained by fraud. In Zuppa v. Hertz Corp., 111 N.J. Super. 419, 421, 268 A.2d 364, 365 (1970), the court held that Hertz was not liable as the owner of a rental vehicle for damage caused in a collision involving a rented automobile because the driver came into possession wrongfully, through the use of another's credit card. Further, in Matter of Utica Mut. Ins. Co., 95 A.D.2d 150, 153-154, 465 N.Y.S.2d 553, 555 (1983), the court held that "where the lessee of a vehicle was guilty of the unauthorized use of a vehicle for a period of ... 21 days beyond the term of his rental agreement" and where the lessor/owner diligently attempted to retake possession, the lessor/owner effectively revoked its consent to the lessee and the victims could not recover. In Utica, the court reasoned that "[a]n innocent victim of an accident may not recover from a lessor or other owner when the offending vehicle was being operated without the owner's permission." Id. (citation omitted).
For the reasons stated and after careful review of the record, we conclude that there was no reasonable evidence upon which a jury could legally predicate a verdict in appellants' favor. Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla. 3d DCA 1978). Accordingly, we affirm the directed verdict in Hertz's favor.
Affirmed.
BARKDULL, J., concurs.
FERGUSON, Judge (dissenting).
After denying a defense motion for a directed verdict, on the theory that reasonable persons could disagree whether Hertz was negligent, the court submitted this negligence action to a jury. The jury of presumptively reasonable persons could not reach a unanimous verdict, therefore, a mistrial was declared. Instead of setting the matter for a new trial, the trial judge granted the defendant's post-trial motion for a directed verdict on a finding, ostensibly, and contrary to what was established in the aborted trial  that a jury of reasonable persons could not disagree on the issue of negligence by Hertz.
The first issue is simply whether there was any evidence of negligent entrustment on the part of Hertz to present a jury question. A separate question, on which liability could turn, is whether there was any evidence of a lack of diligent action on the part of Hertz to regain possession of its vehicle after discovering that it had been fraudulently obtained. I respectfully dissent because there was sufficient evidence to reach the jury as to the issue of Hertz's liability on both points. The defendant's motion for a directed verdict should have been denied.[1]
There are three legal flaws in the majority opinion. First, a court reviewing a judgment entered on a directed verdict should not engage in weighing conflicting evidence. Hendricks v. Dailey, 208 So.2d 101 (Fla. 1968). Second, the majority holding stands for the cataclysmic proposition that *934 a court may find a defendant not negligent, as a matter of law, where there is a violation of a legislative enactment so long as the unlawful conduct is consistent with common industry practice. Compare Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777 (Fla. 1966) (court will not adopt a theory which will judicially counteract a legislative enactment). Third, where an owner-lessor of a dangerous instrumentality negligently entrusts the instrument to an imposter, the borrower's fraud does not shield the owner from liability for his own negligence where harm is caused to innocent third persons by the imposter-borrower. See Tillman Chevrolet Co. v. Moore, 175 So.2d 794 (Fla. 1st DCA 1965), cert. discharged, 184 So.2d 175 (Fla. 1966) (there is a causal relation between the negligence of the dealer in allowing the thief to take possession of the car and the injuries inflicted by the thief so as to render the dealer liable).

Violation Of Statute Is Prima Facie Evidence Of Negligence
Section 322.38(2), Florida Statutes (1985), mandates that "[n]o person shall rent a motor vehicle to another, until he has inspected the operator's or chauffeur's license of the person to whom the vehicle is to be rented, and compared and verified the signature thereon with the signature of such person written in his presence." (Emphasis added). In this case, Hertz did not check the driver's license of the woman purporting to be Linda Major; rather, Hertz recorded only the driver's license of the woman's companion, Mr. Lawrence King.[2] There is no question that Hertz's handling of the transaction violated section 322.38(2).
In de Jesus v. Seaboard Coast Line R.R., 281 So.2d 198 (Fla. 1973), the Florida supreme court divided statutory violations into three categories: (1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular injury or type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence. Because the express legislative intent behind chapter 322 is the promotion of "public safety,"[3] the statutory violation in this case would fit into the third category. As such, Hertz's statutory violation is prima facie evidence of negligence.
A prima facie showing of negligence, by evidence of a statutory violation, is, ordinarily, sufficient to require submission of all the facts to the jury. Booth v. Mary Carter Paint Co., 182 So.2d 292 (Fla. 2d DCA 1966); Lister v. Campbell, 371 So.2d 133 (Fla. 1st DCA), cert. denied, 378 So.2d 346 (Fla. 1979).[4]

*935 Evidence Of Negligent Delay In Regaining Possession

The majority states the facts as presented by the defendant and concludes that there was "no evidence that Hertz was guilty of inaction". In testing a motion for a directed verdict, however, the movant admits all of the facts shown in the evidence and admits to every reasonable inference favorable to the adverse party. Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla. 3d DCA 1978). A materially different version of the facts was presented by the plaintiffs.
On February 5, 1985, Hertz released its automobile to imposters pursuant to a two-day rental agreement. A few days later, the real Linda Major and her husband, Carleton Mattison, reported the theft of her VISA credit card and other mail to the police. They also accused their neighbor, Christopher Harris, of being the perpetrator. Both Clifton Crosby, the uniformed officer who wrote up the original credit card theft report, and Detective Shirley Gibson, an investigator from the Metro Dade Economics Crime Unit, testified that they specifically notified Hertz on February 17th and March 14th about the credit card problem with the Lincoln Town car, and that Hertz took no action.
Detective Gibson also advised the Mattisons of the fraudulent car rental. Two weeks later, Mr. Mattison observed the subject Lincoln parked in the back of Christopher Harris's house. He called the police and was told that Hertz had not reported the car as stolen, or that it was otherwise illegally out of its possession, and that until the company did so there was nothing that the police could do.
On April 16, 1985, over two months after Hertz was put on notice that its vehicle had been fraudulently leased, the minor plaintiff was injured when struck by the vehicle operated by Christopher Harris, an alleged participant in the fraud, who ran a stop sign and knocked the child from his bicycle. Nine days later, police stopped the same car and arrested Harris for grand theft.

Negligent Entrustment Of Dangerous Instrumentality
Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832 (Fla. 1959) and Tillman Chevrolet Co. v. Moore, 175 So.2d 794 (Fla. 1st DCA 1965), cert. discharged, 184 So.2d 175 (Fla. 1966), although factually different, are instructive. Susco involved an entrustment by the lessee to another operator, in violation of the express terms of the lease contract. There it was held that when control of a rental automobile is voluntarily relinquished to another, only a breach of that custody amounting to a specie of conversion or theft by a third person will relieve the owner of responsibility for its use or misuse. Invoking the "non-delegable" duty imposed by the dangerous instrumentality doctrine, the court held:
The principles of the common law do not permit the owner of an instrumentality that is * * * peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle * * * properly operated when it is by his authority on the public highway.
Susco, 112 So.2d at 836 (quoting Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (1917)). There is no evidence in this case that on the date of the accident the rented vehicle was being operated without the authority of the person to whom the *936 vehicle had been negligently entrusted by Hertz.
Tillman, cited by this court with approval in National Car Rental Sys., Inc. v. Bostic, 423 So.2d 915 (Fla. 3d DCA 1982), rev. denied, 436 So.2d 99 (Fla. 1983), is even more on point. There, it was held that where one with larcenous intent, posing as a prospective buyer, obtained permission to drive the automobile a limited distance, the owner was liable for injury caused to a third person by the operation of the vehicle by the thief's permittee, where the original entrustment by the owner was negligent. The rationale of the Tillman court, which is applicable to the facts of this case, is that there is a causal relationship between the negligence of the dealer in allowing the thief to take possession of the car and the injuries inflicted by the thief, or one to whom the thief entrusted possession, so as to render the dealer liable under the dangerous instrumentality doctrine. In this case, the doctrine may apply with greater force since there is evidence of negligence on the part of the owner in two phases  the initial entrustment and the failure to act immediately to regain possession of the dangerous instrumentality after the fact of the fraud became known.
Those Florida cases relied upon by the defendant, which absolve a rental car company of vicarious responsibility for damages sustained by third parties where the leased vehicle is stolen from one to whom it is properly entrusted by the rental agency and misused by one who steals it from the lessee, are not controlling. Those cases where harm is caused to innocent third persons by one who comes into possession of a dangerous instrumentality by fraud, do not hold that the lessee's fraud completely absolves the owner from liability for its own negligence. In fact none of the cases relied on by the majority support its conclusion on the negligent entrustment issue.

Conclusion
Based on the evidence in the record, Hertz was not entitled to a directed verdict. Hertz's violation of a statute, in combination with a fraud by an imposter lessee, caused a dangerous instrumentality to reach the hands of a user who ultimately injured the minor plaintiff. There is substantial evidence as well that timely action by Hertz to recover its vehicle might have prevented the accident. Evidence of a statutory violation and delay, as shown by these facts, was more than sufficient to create a jury question on the issue of Hertz's negligence.
A new trial should have been ordered.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.

ON REHEARING EN BANC
SCHWARTZ, Chief Judge.
We have considered this case en banc pursuant to Fla.R.App.P. 9.331(a) both because it is of exceptional importance and to maintain uniformity in the court's decisions concerning the dangerous instrumentality doctrine.
The facts are those correctly stated in the panel opinion:
On February 5, 1985, Hertz entered into a two-day rental agreement with a woman purporting to be Linda Major, and her companion, Lawrence King. The woman presented Hertz with a Visa credit card issued in Linda Major's name. Mr. King's driver's license number, the license expiration date, the issuing state, and King's age were entered on the additional authorized operator attachment of the rental agreement. Additionally, King's driver's license number and the license expiration date were entered on the front of the Hertz rental agreement. No separate driver's license information was written on the rental agreement for the woman identifying herself as Linda Major. Before relinquishing possession of the vehicle, Hertz ran a credit check on the Visa card presented. Upon receipt of a favorable credit check, Hertz released the vehicle to the above individuals.

*937 Hertz was informed on February 17, 1985, by Metro-Dade Police that the Hertz-owned vehicle had been fraudulently leased with a stolen credit card and that the woman who gave her name as Linda Major was an impostor. Thereafter, on February 26, 1985, and March 1, 1985, respectively, Hertz sent certified letters to both renters demanding the return of the automobile. On March 31, 1985, both letters were returned to Hertz as undeliverable. On April 5, 1985, Hertz reported the vehicle as stolen to the police. Eleven days after the Hertz vehicle was reported stolen, the vehicle, operated by Christopher Harris, an alleged participant in the fraud, was involved in an accident, injuring Billy Jackson.
We conclude that, in these circumstances, Hertz is liable as a matter of law for the negligent operation of its vehicle and that the plaintiffs' motion for directed verdict on liability should have been granted below.
The dangerous instrumentality doctrine is a unique contribution of the Florida judiciary to the common law of this state. In its broad outlines, it imposes strict, vicarious responsibility upon the owner or other possessor of a motor vehicle who voluntarily entrusts it to another for any subsequent negligent operation which injures a member of the travelling public. Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990); Susco Car Rental Sys. v. Leonard, 112 So.2d 832 (Fla. 1959); Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (1947); Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920); Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (1917). This liability extends to the negligent act of whomever is subsequently allowed to drive the car, see Avis Rent-A-Car Sys., Inc. v. Garmas, 440 So.2d 1311 (Fla.3d DCA 1983), pet. for review denied, 451 So.2d 848 (Fla. 1984); Susco, 112 So.2d at 836, and "no matter where the driver goes, starts or stops." Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 57, 194 So. 353, 365 (1940); Boggs v. Butler, 129 Fla. 324, 327, 176 So. 174, 176 (1937); Whalen v. Hill, 219 So.2d 727, 730 (Fla.3d DCA 1969); American Fire & Casualty v. Blanton, 182 So.2d 36, 39 (Fla. 1st DCA 1966). Furthermore,
[w]here "original entrustment" is shown to exist, liability thus imposed on the owner will not be altered because of a departure beyond the scope of authority.
American Fire & Casualty Co., 182 So.2d at 39. In accordance with these rules, liability has been imposed in a variety of situations in which the operation of the car has been in obvious violation of the terms of its entrustment. These range from the violation of specific agreements, that, for example, a car renter not permit another to drive, Susco, 112 So.2d at 832, that he not himself drive, Garmas, 440 So.2d at 1311, and that he not operate the vehicle outside a stated area, Bowman v. Atlanta Baggage & Cab Co., 173 F. Supp. 282 (N.D.Fla. 1969), to what seem to be no less than outrageous deviations from the scope of the original consent. Among the latter is Tillman Chevrolet Co. v. Moore, 175 So.2d 794 (Fla. 1st DCA 1965), cert. discharged, 184 So.2d 175 (Fla. 1986), in which a car dealer allowed a supposed customer to drive its vehicle a few blocks to show it to his wife. It was held liable under the dangerous instrumentality doctrine[1] notwithstanding that the customer  who was convicted of stealing the car  had taken off with it, and that it was negligently driven by a hitchhiker whom the customer permitted to drive it after he picked him up several days later and several hundred miles away. Accord Ivey v. National Fisheries, Inc., 215 So.2d 74 (Fla. 3d DCA 1968) (employer who permitted truck driver to use vehicle for delivery only between home and work liable for driving by drinking buddy given truck after worker stopped at bar and became intoxicated). See generally Thomas v. Atlantic Assocs., Inc., 226 So.2d 100 (Fla. 1969); Tribbitt v. Crown *938 Contractors, Inc., 513 So.2d 1084 (Fla. 1st DCA 1987); Union Air Conditioning, Inc. v. Troxtell, 445 So.2d 1057 (Fla. 3d DCA), pet. for review denied, 453 So.2d 45 (Fla. 1984). But see Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla. 1991).[2]
In very recent years, our supreme court, in the course of re-endorsing the validity of the doctrine, has set forth its essential basis:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. [e.s.]
Kraemer, 572 So.2d at 1365. It has also expressly characterized the legal nature of the initial "consent" or "entrustment" which is the basis of, and indeed establishes, liability under the doctrine:

In the final analysis, while the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent, the essential authority or consent is simply consent to the use or operation of such an instrumentality beyond his own immediate control. Only to that limited extent is the issue pertinent when members of the public are injured by its operation, and only in a situation where the vehicle is not in operation pursuant to his authority, or where he has in fact been deprived of the incidents of ownership, can such an owner escape responsibility. Certainly the terms of a bailment, either restricted or general, can have no bearing upon that question. [e.s.]
Susco, 112 So.2d at 837. But see Stupak.[3] It is plain from these principles and the cases which have applied them, that the dangerous instrumentality doctrine applies here: Hertz clearly consented to the use of its vehicle beyond its immediate control by one who later negligently drove it and injured *939 another. The primary wrinkle lies in Hertz's claim that the principle does not apply because its consent was procured by an act which was both fraudulent and a violation of a criminal law of the state. See §§ 812.012(2), 812.014, Fla. Stat. (1985).
But we have already rejected this argument. National Car Rental Sys., Inc. v. Bostic, 423 So.2d 915 (Fla. 3d DCA 1982), pet. for review denied, 436 So.2d 97, 99 (Fla. 1983) involved a virtually identical factual and, insofar as the dangerous instrumentality doctrine is concerned, legal situation. That case arose out of an accident caused by the negligent operation of a National Car Rental vehicle by Laverne Jackson. During the course of the proceeding,
National and Travelers also moved to amend their answer to file an additional affirmative defense of non-liability alleging that subsequent to filing their answer they found out that ... [the person who originally rented the car] had obtained the car by fraudulent means [to wit: an altered credit card] and the car was in fact a stolen vehicle which was being driven without valid consent. That motion was .. . denied.
Bostic, 423 So.2d at 916. We held that the motion had been correctly denied:
Secondly the appellants contend the trial court erred in refusing to allow them to amend their affirmative defenses prior to trial and to assert at trial the defense of lack of consent to drive the car. We find this point to be without merit. See Tillman Chevrolet Company v. Moore, 175 So.2d 794 (Fla. 1st DCA 1965); Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959).
Id., at 917. Bostic's citation of Tillman and Susco demonstrates that the claim that the rental car had been procured, as here, by a fraudulent credit card was held substantively insufficient as a matter of law. This was and is true because, as Tillman holds, the effect of an original consent is not abrogated by the obvious misrepresentations of a potential thief as to his intentions in using the car, or as Susco holds, by any subsequent deviation from the terms of entrustment. See also Boggs v. Butler, 129 Fla. at 324, 176 So. at 174 (consent not affected by owner's intoxication and unconsciousness). Bostic alone thus compels rejection of Hertz's claim of non-responsibility.
Nor is there any question that Bostic was correctly decided. It would fatally compromise the interests of the innocent public if a rent-a-car agency (even more than a private owner) which (a) is in the very business of leasing cars for a profit,[4] (b) has extensive and elaborate means to safeguard itself against fraud or other misconduct and (c) is certainly "in the best position to make certain that there will be adequate resources" to pay damages caused by its vehicle, Kraemer, 572 So.2d at 1365, can avoid that liability if it is given a bad check, a counterfeit bill or a fraudulent driver's license  all of which involve violations of the criminal law, but none of which should affect the owner's tort liability for its automobile. See Tillman, 175 So.2d at 796 ("Appellant cites Section 811.021, Florida Statutes, F.S.A. (the general larceny act), for the proposition that a bailee is guilty of larceny if he appropriates property in his possession with an intent permanently to deprive the owner of it. We do not accept the statutory definition of larceny as having any bearing upon the question of civil liability here involved.").[5] *940 Indeed, a contrary rule would require a finding of non-responsibility contrary to the decided cases whenever it could be shown  as is likely often the case  that the prospective renter intended to violate the restrictions as to the vehicle's use at the time he rented it and had thus perpetrated a criminal fraud.[6] See §§ 812.012(2), 817.52(1) Fla. Stat. (1985). We will not endorse such a position.
Hertz places great reliance upon the often-cited dictum in Susco that an owner may be insulated from liability when the vehicle is obtained through a "species of conversion or theft." 112 So.2d at 836; see Stupak.[7] A careful analysis of these terms in their historical context reveals, however, not only that the supreme court did not imply that a fraudulent inducement of consent would constitute a defense, but that the exact opposite is true.
1. The term "conversion" refers, of course, to the wrongful taking of another's right to possession of the property in question. See 18 Am.Jur.2d Conversion § 24 (1985); 12 Fla.Jur.2d Conversion & Replevin § 1 (1979). While it is apparently true that an action for conversion  which was usually enforced by the form of action at law of trover  will lie against a person who obtains goods by fraud or duress, see 18 Am.Jur.2d Conversion § 32, it is altogether clear that such an action may not be maintained against one who innocently buys the chattel in question from the defrauder. See Restatement (Second) of Torts § 252A (1965) ("Consent to possession of a chattel obtained by fraud or duress is not effective to prevent recovery for trespass to the chattel or for conversion against any one other than a bona fide purchaser of the chattel." [e.s.]); Restatement (Second) of Torts § 252A Illustration 3 ("A [a defrauder] sells and delivers the car to C, a purchaser for value without notice of the fraud. B cannot maintain an action for trespass or for conversion against C."); McCullen v. Hereford State Bank, 214 F.2d 185 (5th Cir.1954); Martin v. Green, 117 Me. 138, 102 A. 977 (1918); Parr v. Helfrich, 108 Neb. 801, 189 N.W. 281 (1922); Porell v. Cavanaugh, 69 N.H. 364, 41 A. 860 (1898); Hoffman v. Alpern, 193 Misc. 695, 85 N.Y.S.2d 561 (City Ct. 1948).[8] We think this perhaps arcane law school doctrine is directly applicable to this case. A bona fide purchaser who buys goods for value, who does not know of the interests of a person who has given the goods to his seller, is in a legal position exactly equivalent to a member of the public struck by a negligently driven vehicle, who does not know or care about the manner in which the owner was led to permit the use of that dangerous instrumentality on the public streets. Since it is for the plaintiff's protection that the doctrine of liability based on consensual use was formulated in the first place, he surely cannot be subject to such a defense  most specifically, not as a matter of the law of "conversion."
2. The proposed application of the term "theft" to a fraudulent taking is similarly insupportable. "Theft," considered as it was used in Susco in 1959, well before "theft" became a statutory crime in 1977, see the Florida Anti-Fencing Act, Ch. 77-342, §§ 3-4, Laws of Fla. (§§ 812.012, 812.014, Fla. Stat. (1989)); see also Thompson v. State, 585 So.2d 492 (Fla. 5th DCA 1991), is primarily defined as the equivalent of common law larceny, that is, the taking of property without the consent of the owner. People v. Sims, 29 Ill. App.3d 815, 331 N.E.2d 178 (1975). Common law larceny, in turn, as its very definition suggests, does not include either of the traditionally separate crimes of embezzlement and *941 false pretenses  which respectively involve a taking after property had initially lawfully come into one's possession, and the obtaining of title by consent through the perpetration of a fraud. See 20 Fla. Jur. Larceny §§ 8-9 (1958).[9] But it is the last category  and not common law larceny and thus not Susco-type "theft"  into which the conduct before us falls. In other words, considered in the light of what it was seeking to accomplish by the adoption of the doctrine, it is apparent that by "theft" the supreme court meant a larceny or a wrongful non-consensual taking from the possession of the true owner; such a "theft" has always precluded liability under the doctrine. See 4 Fla.Jur.2d Automobiles and Other Vehicles § 285 (1978). The expression did not encompass the fraudulent or other criminal inducement of consent, which, as we have seen, cannot be deemed a cognizable defense.
Thus, whatever species of the genera "conversion" and "theft" the supreme court meant in Susco, it did not include this one.[10]
Finally, we turn to the argued effect of Hertz's attempts to reclaim its vehicle after it became aware of the fraud and the fact that the car had not been returned on time. While we may share the view that these efforts were desultory at best, we do not pursue the issue because we are convinced that no such efforts, even heroic ones, can be effective to obviate the owner's liability under the doctrine. We have seen in this regard that that liability both arises and is complete when the owner consents to the use of the vehicle "beyond his own immediate control," Susco, 112 So.2d at 835-36, and that this liability continues for any negligent operation of the car no matter who does it or where or when it occurs. But see Stupak.[11] It would be, again, contrary to the very nature of the liability to suggest that it may be avoided by a subsequent attempt to revoke the irrevocable  the owner's responsibility for the car's being on the highway in a position to injure the plaintiff.[12]
All in all, we consider, in the words of an early Florida case on the issue, that Hertz's attempts to avoid liability under the facts presented are
entirely beyond our conception of the responsibility one should assume where he is in the business of entrusting vehicles of such character to another for a price.
Fleming v. Alter, 69 So.2d 185, 186 (Fla. 1953).
On the basis of the dangerous instrumentality doctrine,[13] then, we hold that Hertz's *942 liability has been established as a matter of law. The judgment below is therefore reversed and the cause remanded for a new trial on damages only.
We certify to the supreme court that this decision involves questions of great public importance as to whether the liability of a car rental company under the dangerous instrumentality doctrine is affected by the facts that (a) the rental was secured by fraud, (b) the period for which the vehicle was rented was greatly exceeded and/or (c) the car rental company made efforts to recover the vehicle after it became aware of the fraud and that the vehicle was not timely returned.
Reversed and remanded, question certified.
NESBITT, BASKIN, LEVY, GERSTEN and GODERICH, JJ., concur.

APPENDIX[*]
Many of the principles discussed at note 8 and accompanying text were quite fortuitously expressed in the following operetta composed by the author in 1955 in Professor Charles M. Haar's Property I class at Harvard Law School. See generally A.J. Casner & W.B. Leach, Cases and Text on Property 179-212 (1951).

A, Most Happy Sella
The curtain rises to reveal three persons wearing tee shirts prominently labeled A, B, and C, respectively.
C (carrying various boxes of unknown contents, sings to the tune of "I'm an Old Cowhand")
 I'm a B F P
 On a buying spree
 When I get the yen
 I buy from con men
 `Cause a con man
 Seems a trustworthy B
 When I buy from him
 I'm a bona fide C
 All of poor A's rights are in equity
 And are lost to me  ee,
 No trover for me.
B (wearing a serape and a sombrero, then comes forward, and sings to the tune of "South of the Border")
 South of the Border
 Down Mexico way
 That's where I spend the dough
 I get for goods
 I steal from A
 C was so happy
 He got such a buy
 But he is so sappy
 A converter am I
C (Hearing this, the previously joyful C becomes noticeably concerned and asks B) "Just a minute, when you snookered these goods from A, you were there in person, weren't you?"[1a]
B (snickers in response) "No" (and continues his song)
 I sent A a letter
 And said to him please
 Send me the goods right quick
 And you will see
 I'll pay with ease
 But I didn't sign my name
 I'm too smart a guy
 I said to him "A, pal,
 J.P. Morgan am I"[2a]
*943 (C slinks off in defeat)
A (previously morose, now-victorious sings to the tune of "Happy Days are Here Again")
 Happy A will rise again
 A case in trover lies again
 C will have no starry eyes again
 Happy A will rise again
 The BFP is defeated
 He'll win no suit from now on
 His legal rights are unseated
 So I am singing this song
 Happy A will rise again
 A case in trover lies again
 C will have no starry eyes again
 Happy A will rise again
 Curtain
HUBBART, Judge (partially dissenting).
I concur in the court's reversal of the final judgment under review which was entered below for Hertz based on a directed verdict, but dissent from the court's remand directions to the trial court that a directed verdict be entered for the plaintiff on the issue of liability as to the negligence action based on dangerous instrumentality doctrine. I would reverse and remand for a trial on this claim as to the issues of both liability and damages; in my view, a directed verdict for either party to this action is inappropriate.
I entirely agree with the court  and disagree with the panel majority  that where the owner of a motor vehicle voluntarily relinquishes control over the vehicle to another, the owner is liable for the subsequent negligent operation of such vehicle under the dangerous instrumentality doctrine  even though the vehicle was initially procured from the owner, as here, through fraud. I disagree with the court, however, that "this liability continues [indefinitely] for any negligent operation of the [vehicle] no matter who does it or where or when it occurs." See page 941.
In accord with the leading case of Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 835-36 (Fla. 1959), it is clear that "when control of ... a vehicle is voluntarily relinquished [by the owner] to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse." I think this necessarily means that at some point in time a vehicle, which is procured from the owner by fraud and not returned, must be considered as converted or stolen, so as to absolve the owner of legal responsibility under the dangerous instrumentality doctrine for the vehicle's subsequent negligent operation. I would hold that such a point is reached after a reasonable length of time has elapsed from the date the vehicle is relinquished by the owner, without the vehicle having been returned, so that it may be inferred that the vehicle has been appropriated by another without the consent of the owner; in no event, however, should such a reasonable time exceed one year from the date the owner relinquishes possession of the vehicle, as by then an inference of theft or conversion would be irresistible.[1]
In determining what constitutes a reasonable time within this one-year period after which a vehicle secured by fraud may properly be considered converted or stolen, I think the totality of the circumstances of the case should be taken into account  including what efforts, if any, the owner has made to recover the vehicle. In this connection, I disagree with the court that "no such efforts, even heroic ones, can be effective to obviate the owner's liability under [the dangerous instrumentality] doctrine." See page 941 (emphasis omitted). If indeed such heroic efforts are made over a period of, say, six months, I think a jury could reasonably conclude that the vehicle had been converted or stolen if not recovered during this time despite such pervasive efforts; certainly, this would be an important factor in weighing all the circumstances *944 as to whether a reasonable time has elapsed from the taking of the vehicle so as to consider vehicle converted or stolen.
The Florida Supreme Court in Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla. 1991), has recently concluded that another important factor  in determining what constitutes a reasonable time after which a vehicle procured from a rental car company may be considered converted or stolen under the dangerous instrumentality doctrine  is a provision in the rental contract between the parties that the rental vehicle will be considered stolen or converted if not returned by the due date. Thus, the Court held that under such a contract a jury question was presented as to whether the rental vehicle therein was stolen or converted when it was not returned by the contractual due date  and a summary judgment for the rental car company was reversed for a trial in a negligence suit based on the dangerous instrumentality doctrine brought by a party injured in an accident involving the rental vehicle, which accident had occurred subsequent to the due date.
Similarly, in the instant case, I think a jury question is presented as to whether or not the rental vehicle herein was stolen or converted at the time of the accident sued upon under the dangerous instrumentality doctrine. Prior to the accident, Hertz had sent registered letters to the renters of the subject vehicle demanding that the vehicle be returned after discovering that a stolen credit card had been used to rent the vehicle; these letters were returned as undeliverable because false addresses had been given by the renters. Subsequently, Hertz reported the vehicle to the police as stolen eleven days prior to the accident sued upon. On the other hand, the rental contract contained no provision that the vehicle would be considered stolen or converted if not returned on its due date, and, indeed, contained daily rental charges for overdue days. Moreover, Hertz had made no personal efforts on its own to search for and recover the vehicle  and, as the court notes, its efforts in sending out letters to the renters and in notifying the police were arguably desultory. Nonetheless, two months had elapsed from the rental date to the date of the accident involving the subject vehicle on a two-day rental contract. Given the totality of this conflicting evidence, I think Hertz may reasonably be held liable or exonerated by a jury for the negligent operation of the subject vehicle based on the dangerous instrumentality doctrine; a directed verdict for either party is clearly inappropriate.
I would reverse and remand for a trial as to the issues of liability and damages based on the negligence action founded on the dangerous instrumentality doctrine. I agree, however, with the court that no other cause of action is viable on this record.
BARKDULL, FERGUSON and COPE, JJ., concur.
JORGENSON, Judge, dissenting.
I respectfully dissent and would adhere to the panel opinion for the reasons stated therein. Furthermore, since oral argument the supreme court has decided Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla. 1991), which in my view determines the outcome in this cause.
I agree with the court that the question certified is one of great public importance.
NOTES
[1] The Metro Dade Police Department Auto Theft Division requires that rental car companies send a certified letter to the renter of each vehicle before any vehicle can be reported as stolen.
[2] Section 322.38(2) provides that: "No person shall rent a motor vehicle to another, until he has inspected the operator's or chauffeur's license of the person to whom the vehicle is to be rented, and compared and verified the signature thereon with the signature of such person written in his presence."
[3] Even if Hertz had violated the terms of section 322.38(2), its failure to comply with this penal statute was not the proximate cause of the plaintiff's injury. Christy v. Baker, 7 Ariz. App. 354, 439 P.2d 517 (1968) (violation of statute prohibiting rental of automobile without inspection of operator's license not negligence because rental of automobile to person without license was not proximate cause of injury; lack of license did not make driver incompetent to drive and accident would have occurred whether or not driver had valid license in his possession). Therefore, no reasonable jury could have found Hertz negligent here. See de Jesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla. 1973) (proof of violation of traffic ordinance is only prima facie evidence of negligence; proximate cause and other elements of negligence must be proven independently); Brightwell v. Beem, 90 So.2d 320 (Fla. 1956) (if minds of reasonable men could not differ as to cause of injury, issue of proximate cause is question of law for court).
[4] Section 812.014, Florida Statutes (1985), entitled "Theft" provides, inter alia, that:

(1) a person is guilty of theft if he knowingly obtains or uses ... the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit therefrom. (b) Appropriate the property to his own use or the use of any person not entitled thereto.
The term "obtains or uses" found within the theft statute includes "conduct previously known as ... larceny, ... obtaining money or property by false pretenses, fraud, or deception... . § 812.012(2), Fla. Stat. (1985). In Richardson v. State, 193 So.2d 637 (Fla. 3d DCA 1967), this court held that a defendant who rented an automobile from a rental agency with a stolen credit card was guilty of grand larceny, where the value of the property obtained exceeded $100. Based on the foregoing authorities, the Hertz vehicle clearly was obtained by theft.
[1] A directed verdict should only be issued if after reviewing the evidence and testimony in a light most favorable to the non-moving party, a jury could not reasonably differ as to the existence of a material fact or a material inference and that the movant is entitled to judgment as a matter of law. Put another way, such motions should not be granted when there is any reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party. Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla. 3d DCA 1978) (Emphasis added). See also Hendricks v. Dailey, 208 So.2d 101 (Fla. 1968); Dandashi v. Fine, 397 So.2d 442 (Fla. 3d DCA 1981); Behar v. Root, 393 So.2d 1169 (Fla. 3d DCA 1981).
[2] Hertz rented the automobile to only the person purporting to be Linda Major. The majority suggests, perhaps unintentionally, that the vehicle was rented to two persons. The person posing as Linda Major is the "customer" to whom the car was rented. On the second page of the contract, Lawrence King signed as an "Additional Authorized Operator," not as the principal customer.
[3] Section 322.42, Florida Statutes (1985) provides: "This chapter shall be liberally construed to the end that the greatest force and effect may be given to its provisions for the promotion of public safety."
[4] There is no disagreement with the statement of law in note three of the majority opinion that the issue of proximate causation, although ordinarily a fact question for the jury, may be decided as a matter of law where reasonable people could not differ. Banat v. Armando, 430 So.2d 503 (Fla. 3d DCA 1983), rev. denied, 446 So.2d 99 (Fla. 1984). The question here is whether reasonable people could differ. On the evidence they could, and in the first trial they probably did. Nevertheless, the case is before us on the easier question: Whether there was so little as a reasonable inference to be drawn from the evidence which supported the plaintiffs' theory of the case. Hendricks, 208 So.2d 101. Given the statutory violation by Hertz, I believe the plaintiffs here satisfied this minimal burden.

The majority cites Christy v. Baker, 7 Ariz. App. 354, 439 P.2d 517 (1968), which holds that violation of a similar Arizona statute was not the proximate cause of injury. That case is distinguishable. There, the plaintiff "placed all of his eggs in one basket," proceeding on a theory of negligence per se. In ruling for the defendant, the court narrowed the issue to "whether a person in the automobile rental business who violates the statute ... was strictly liable to a third person injured by the borrower's negligent operation of the vehicle." (Emphasis added). If this case had been brought in strict liability under Florida law, the plaintiff might have suffered the same fate. Absent proof that the injured person was in the particular class the statute was designed to protect, there is no negligence per se. On the other hand, under Florida law, where it is established that the injured plaintiff was within the protected class, it is not necessary to prove a causal relationship. Sloan v. Coit Int'l, 292 So.2d 15 (Fla. 1974).
Both the legal theory of the plaintiff in Christy v. Baker and the Arizona law of negligence per se are different from the plaintiffs' theory in this case and the Florida law of negligence per se.
[1] We believe, contrary to the views of both panel opinions, that Tillman is a pure dangerous instrumentality case, in which liability was imposed on the basis of the original entrustment of the vehicle, not upon a so-called "negligent" entrustment at all.
[2] It must be acknowledged that language in Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla. 1991) is seemingly at variance with several of the principles and conclusions contained in this opinion, which was almost completely prepared prior to Stupak's release. Nevertheless, we do not consider that Stupak requires a contrary result because (1) the rental agreement before us does not contain the provisions concerning theft and conversion which were present in that case and (2) very much more important, the case was decided only upon the claim of the owner of the vehicle to a summary judgment in its favor. Thus, the rejection of that contention did not require or even involve a determination that the plaintiff was entitled to judgment in his favor on the dangerous instrumentality issue.

Even beyond this, however, it must be said that the reference to the term of the rental agreement "that vehicles not returned by the due date are considered theft by conversion," Stupak, 585 So.2d at 284, appears to be directly contrary to the thrust of Susco, 112 So.2d at 832, and many similar cases which clearly hold that a rent-a-car company may not limit its liability to innocent persons by the restrictive terms of its contract with the renter or lessee. It does not stand to reason that, if a rental company is liable notwithstanding the breach of a specific agreement as to the driver, the state, or the length of time in which the car is to be used, it may nevertheless achieve a contrary result simply by unilaterally calling such a breach a "conversion" or "theft." No company should be permitted to use such a ploy, one obviously drafted with the language of Susco in mind, as a means of evading its responsibility  any more than it could claim that a "conversion" has occurred when the driver exceeds the speed limit or an employer could evade respondeat superior liability by stating that any violation of the traffic laws is beyond the employee's scope of employment. See Susco, id. Instead, the existence of an exculpatory species of conversion or theft must be one for the courts alone to decide on the basis of the underlying policies the dangerous instrumentality doctrine is designed to vindicate. As we hold in this opinion, no such "species" occurred here. (We must add that in our view, on a fortiori basis, none occurred in Stupak either.)
Finally, if we are wrong about any of this, including our view of Stupak, the supreme court will tell us so in answer to the certified question posed in this opinion (or on the basis of its taking jurisdiction because this decision is in conflict with Stupak).
[3] See supra note 2.
[4] It should be noted that, no matter how the car is secured or when it is recovered, the lessees remain liable to Hertz for the rental charges. This shows at once that neither the initial or continued possession of the vehicle "deprived [Hertz] of the incidents of ownership," Susco, 112 So.2d at 837, or was inconsistent with the initial terms of the rental, id., and the incongruity of simultaneously permitting Hertz to reap the economic benefits of a violation of the agreement while relieving it of the burden of tort liability.
[5] The same should be true of the other end of the entrustment-possession continuum. The fact that it may be a crime to fail timely to redeliver a hired vehicle, § 817.52(3), Fla. Stat. (1985), should not alter the renter's tort responsibility even when, as in this case, it is used well beyond the period of the lease. Susco, 112 So.2d at 832. But see Stupak.
[6] Thus, for example, Susco itself would have come out the other way if the actual lessee intended all along to let someone else drive.
[7] See supra note 2.
[8] This result is founded on the theory that one who sells to another under false pretenses ordinarily has the intent to transfer legal title to the defrauder and retains only an equitable interest which is "cut off" by the superior legal rights of a bona fide purchaser. See generally Ames, Purchase for Value Without Notice, 1 Harv. L.Rev. 1 (1887); see also Appendix.
[9] For the purpose of this line of reasoning, it does not matter that, as of 1951, see Ch. 26912, Laws of Fla. (1951), the Florida statutory definition of larceny included embezzlement and false pretenses. See § 811.021, Fla. Stat. (1951).
[10] It may be that the court was actually referring to a break in the chain of responsibility by a "conversion or theft" from the renters or their permittees. But see Stupak. No such thing occurred here.
[11] See supra note 2.
[12] The only case cited by the panel majority for the contrary proposition is Matter of Utica Mutual Ins. Co., 95 A.D.2d 150, 465 N.Y.S.2d 553 (1983). Utica involves the interpretation of a New York statutory provision which is not in accord with the thrust of the Florida dangerous instrumentality law. We much prefer the opinion of the trial court, which is virtually identical to the language of Susco:

The Court finds that the evidence herein is insufficient to rebut the presumption which holds the owner of the vehicle liable. The general public must be protected in accidents involving rental cars even where there is a deviation from private contract between the lessor and lessee.
Utica, 95 A.D.2d at 152, 465 N.Y.S.2d at 555. The other out-of-state decision cited by the majority, Zuppa v. Hertz Corp., 111 N.J. Super. 419, 268 A.2d 364 (1970), is a nisi prius interpretation of the term "bailee" in a similarly non-analogous New Jersey statute.
[13] Although we are inclined to agree with the view expressed in footnote 3 of the majority panel opinion that no action arises out of an alleged violation of § 322.38(2) because the harm or risk sought to be prevented by the statute does not include the fact that the defrauder may operate the vehicle negligently and thus damage the plaintiff, see de Jesus v. Seaboard Coastline R.R., 281 So.2d 198 (Fla. 1973); but see Vining v. Avis Rent-A-Car Sys., Inc., 354 So.2d 54 (Fla. 1977), the basis of our decision makes it unnecessary to resolve the question.

We do indicate, however, that, for the reasons stated, it is unlikely that there are such things in these circumstances as actions for "negligent" entrustment of a motor vehicle or for "negligent delay in regaining possession" of one. This is because (a) there either is liability or there is not depending only on the existence of an entrustment, however secured, see McLin v. Grady, 363 So.2d 395 (Fla. 1st DCA 1978); and (b) liability continues until possession is successfully retaken regardless of the efforts to secure it.
[*] I am authorized, indeed directed, by my colleagues to state that none of them has anything to do with, let alone joins, this Appendix.
[1a] E.g., Phelps v. McQuade, 220 N.Y. 232, 234, 115 N.E. 441, 442 (1917) (vendor dealing personally with defrauder, as Hertz did with "Major" and "King," deemed to intend to pass title to that person "even though he [is] deceived as to that person's identity or responsibility"; subsequent bona fide purchaser from impostor prevails over vendor, as Jackson does over Hertz).
[2a] E.g., Mercantile Nat'l Bank v. Silverman, 148 A.D. 1, 132 N.Y.S. 1017 (1911), aff'd, 210 N.Y. 567, 104 N.E. 1134 (1914) (vendor dealing with defrauder by mail deemed to intend to pass title only to person identified; subsequent bona fide purchaser from impostor does not prevail over vendor).
[1] As an aside, I think a one-year cut off date is also needed so that an owner, who has been fraudulently induced to relinquish his motor vehicle to another, has a date certain beyond which he will no longer be obliged to carry liability insurance on the vehicle; any other rule, including the court's holding herein, would require the owner to carry liability insurance on the vehicle indefinitely.