NATIONWIDE MUTUAL INSURANCE COMPANY v. RONNIE WAYNE LAND, JESSIE H. PRUITT, ARCHIE ROLAND TALLEY, NORTH CAROLINA NATIONAL BANK AND LUMBERMENS MUTUAL CASUALTY COMPANY

No. 8517SC161

(Filed 17 December 1985)

1. **Insurance § 87; Landlord and Tenant § 5; Trover and Conversion § 1— leased automobile—default and failure to return—no coverage under lessor's insurance**

In a declaratory judgment action to determine whether an automobile insurance policy written by plaintiff for NCNB as an automobile lessor covered a collision, the trial court erred by concluding that Talley was operating the automobile as NCNB's lessee at the time of the collision where the relationship of lessor and lessee had ceased to exist because Talley's continued possession of the automobile after NCNB had given him notice that he was in default and demanded possession was adverse to the rights of NCNB as owner and lessor and amounted to a conversion of the automobile. N.C.G.S. 20-281, N.C.G.S. 20-279.21(b)(2).

**2. Insurance § 87.2— leased automobile—breach of lease—continued operation not with permission of lessor—not covered by lessor's insurance**

In a declaratory judgment action to determine whether a policy plaintiff had issued to NCNB as an automobile lessor covered an accident which occurred after the lessee breached the lease, the trial court erred by concluding that NCNB was insufficiently aggressive in its efforts to recover the automobile after default, that its efforts were ineffective to revoke the permission initially given to the lessee to operate the car, that its conduct signified assent to the lessee's use of the car, and that the lessee was therefore driving the car with NCNB's permission when the accident occurred. NCNB had employed an automobile recovery agency in an attempt to locate the car, had contacted the lessee's relatives and acquaintances, had procured a warrant for the lessee's arrest, and had notified the Winston-Salem Police Department. It was not unreasonable for NCNB to rely on one law enforcement agency to seek the assistance of others and the mere fact that the lessee possessed a license plate and a registration showing NCNB as the owner of the car at the time of the accident did not support the conclusion that NCNB acquiesced in the lessee's operation of the automobile absent findings as to how he came into possession of the license plate and registration. N.C.G.S. 20-279.21(b)(2).

APPEAL by plaintiff from *Morgan, Judge.* Judgment entered 19 November 1984 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 24 September 1985.

This is a declaratory judgment action instituted by Nationwide Mutual Insurance Company (Nationwide) to determine whether it provided coverage, under a policy issued to North Carolina National Bank (NCNB), for injuries sustained by Ronnie Wayne Land and Jessie H. Pruitt in an automobile collision occurring in South Carolina on 12 April 1981. Land and Pruitt were injured when the automobile which they occupied collided with a 1979 Chrysler automobile owned by NCNB and driven by Archie Roland Talley. Lumbermens Mutual Casualty Company provides uninsured motorists coverage for Land and Pruitt.

All parties waived a jury trial. The trial court entered judgment declaring that Nationwide provided coverage, pursuant to G.S. 20-281 and its policy, for "legal liability of Archie Roland Talley for personal injury and property damage arising out of the operation of NCNB's 1979 Chrysler automobile on April 12, 1981 . . . ." Nationwide appeals.

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready by James H. Kelly, Jr. and Michael L. Robinson for plaintiff appellant.*

*Tuggle, Duggins, Meschan & Elrod, P.A., by Kenneth R. Keller and J. Reed Johnston, Jr. for defendant appellees.*

MARTIN, Judge.

The ultimate issue to be decided in this appeal is whether Nationwide's policy issued to NCNB affords coverage to Archie Roland Talley for liability incurred while he was operating an automobile owned by NCNB. The answer to that issue depends upon whether Talley was operating the automobile as NCNB's lessee, so as to be within coverage required by G.S. 20-281, or with NCNB's permission, so that he would be an "insured" within the provisions of the policy itself. For the reasons which follow, we conclude that Talley was neither a lessee nor an insured. Accordingly, we reverse the judgment of the trial court.

From the stipulations of the parties, and the evidence presented at trial, the trial judge found the following pertinent facts: On 7 December 1979, Talley leased the 1979 Chrysler automobile from NCNB for a period of three years. The lease provided for a monthly rental fee to be paid by Talley and required that he maintain insurance, including liability insurance, on the automobile. The lease provided that a breach of either of these conditions, as well as the occurrence of other specified events, would constitute "events of default." Upon the occurrence of an "event of default" NCNB had a right to terminate the lease without releasing Talley from any of his obligations thereunder, and to demand and receive immediate possession of the automobile.

Talley made four rental payments on the automobile, paying the monthly rental fee through February, 1980. Talley also procured a policy of insurance on the vehicle from another insurance company, however he did not pay the required premium and his insurance policy was cancelled in June, 1980, effective 15 May 1980.

In March, 1980, NCNB became aware that Talley was being sought by law enforcement officials for a felony allegedly com-

mitted in South Carolina. Due to that information and to Talley's default in the payment of rental for March, 1980, NCNB undertook to try and locate Talley and the vehicle. On 28 March 1980 NCNB was informed by Talley's employer that Talley had quit his job and left Winston-Salem. NCNB then contacted the Automobile Recovery Bureau in Atlanta for assistance in locating Talley and repossessing the automobile. On 2 April 1980 NCNB sent a letter to Talley at his address in Winston-Salem, which was shown in the lease. The letter, stipulated into evidence, advised Talley that he was in default, demanded payment of the balance due and demanded that he surrender "any collateral which secured the account above identified." NCNB also contacted Talley's former wife and others who knew him in South Carolina and in Georgia, and relayed information obtained from those contacts to the Automobile Recovery Bureau in Atlanta. On 25 July 1980 the Recovery Bureau notified NCNB that they had been unable to locate Talley or the automobile. On 20 August 1980 NCNB obtained a warrant, in Forsyth County, for Talley's arrest. The warrant alleged that Talley had obtained possession of the Chrysler automobile by fraud, in violation of G.S. 20-106.1. NCNB did not contact any law enforcement agency other than in Forsyth County relative to Talley or the automobile.

When the automobile was leased, NCNB caused it to be titled and registered with the North Carolina Department of Motor Vehicles in NCNB's name. On 12 April 1981, Talley was operating the 1979 Chrysler in South Carolina and collided with a vehicle occupied by Land and Pruitt. At the time of the collision, the 1979 Chrysler displayed a current North Carolina license plate and inspection sticker and Talley was in possession of a current registration card identifying NCNB as the owner of the automobile. The car had not been reported as a stolen vehicle in South Carolina.

Both Land and Pruitt commenced actions against Talley in the Court of Common Pleas of Horry County, South Carolina, alleging that they suffered personal injuries as a result of Talley's negligent operation of the 1979 Chrysler automobile. Lumbermens Mutual Casualty Company provided uninsured motorist coverage to them.

Upon those facts, the trial court concluded, *inter alia*:

6. At the time of the accident on April 12, 1981, Archie Roland Talley was a lessee of NCNB, operating the 1979 Chrysler automobile as a member of the public subject to and within the meaning of G.S. § 20-181.

7. Nationwide is required by G.S. § 20-181 to provide insurance coverage, up to the face amount of Nationwide's policy 61-GA-640-273-0002 ($500.00 [sic] for bodily injury/$250,000 for property damage) for liability imposed by law for bodily injury or property damage arising out of the operation of the 1979 Chrysler automobile by Archie Roland Talley, specifically including personal injury and property damage sustained by Ronnie Wayne Lane [sic] and Jessie H. Pruitt.

8. Archie Roland Talley had initial permission from NCNB to operate the 1979 Chrysler automobile.

9. NCNB was insufficiently aggressive in seeking to recover the 1979 Chrysler automobile and allowed the vehicle to be registered with the North Carolina Department of Motor Vehicles and display a current safety inspection sticker for year 1981.

10. NCNB's course of conduct constitutes mutual acquiescence or lack of objection signifying assent to the operation of the 1979 Chrysler automobile by Archie Roland Talley at the time of the accident on April 12, 1981.

11. NCNB's efforts were ineffective to revoke initial permission to Archie Roland Talley to operate the 1979 Chrysler automobile on April 12, 1981.

12. Archie Roland Talley had permission from NCNB to operate the 1979 Chrysler on April 12, 1981.

13. Alternatively, Nationwide provides voluntary coverage under policy 61-GA-640-273-0002 with NCNB for legal liability of Archie Roland Talley arising out of the operation of the 1979 Chrysler automobile on April 12, 1981, up to the limits of Nationwide's policy ($500,000 bodily injury/$250,000 property damage).

I

[1]   Nationwide excepts and assigns error to the trial court's conclusions of law that Talley was, on 12 April 1981, operating the

automobile as NCNB's lessee and that Nationwide is therefore required, pursuant to G.S. 20-281, to provide coverage. Nationwide contends that the court's conclusion that Talley was NCNB's lessee on the date of the accident is unsupported by the evidence and the court's findings. We agree.

G.S. 20-281 requires every person, firm or corporation engaged in the business of renting or leasing automobiles to the public to maintain motor vehicle liability insurance. The statute provides in part:

> Each such motor vehicle leased or rented must be covered by a policy of liability insurance insuring the owner and rentee or lessee . . . from any liability imposed by law for damages . . . because of bodily injury to or death of any person and injury to or destruction of property caused by accident arising out of the operation of such motor vehicle . . . .

The provisions of the statute are a part of Nationwide's policy issued to NCNB. *American Tours, Inc. v. Liberty Mut. Ins. Co.*, 68 N.C. App. 668, 316 S.E. 2d 105, *disc. rev. allowed*, 311 N.C. 750, 321 S.E. 2d 125 (1984).

G.S. 20-281 would apply, and require the extension of coverage to Talley, if Talley was NCNB's lessee at the time of the accident. The trial court found, however, that Talley made only four rental payments, the last of which was made on 25 January 1980. The court also found that NCNB mailed Talley, at his last known address, correspondence by which NCNB declared him to be in default and demanded possession of the automobile. The lease gave NCNB the right to terminate upon default by non-payment and to demand and receive possession of the automobile. Talley's continued possession of the automobile, after NCNB had given him notice that he was in default and demanded possession of the automobile, was adverse to the rights of NCNB as owner and lessor and amounted to a conversion of the automobile. The relationship of lessor-lessee ceased to exist. Therefore, the trial court erred in concluding that Talley was operating the automobile as NCNB's lessee at the time of the collision, some twelve months after the lease had been terminated by reason of his default. Since Talley was not operating the 1979 Chrysler as NCNB's lessee, Nationwide is not required by G.S. 20-281 to extend coverage for personal injuries caused by his operation of that

automobile. *See Iowa Nat'l Mut. Ins. Co. v. Broughton,* 283 N.C. 309, 196 S.E. 2d 243 (1973).

Our holding should not be construed as relieving an insurer, who issues a policy to satisfy the requirements of G.S. 20-281, from its duty to provide coverage for a lessee upon a mere breach of an automobile lease agreement, or even upon a default in its terms. We believe that the Legislature intended that coverage under G.S. 20-281 should be extended until such time as there has been a clear termination of the relationship of lessor-lessee. Such a rule would be consistent with the view of our Supreme Court, adopted in cases involving questions of permissive use under G.S. 20-279.21(b)(2), that a minor deviation from the permitted use of a vehicle will not defeat coverage, but a material deviation from the permission given constitutes a use without permission. *See Hawley v. Indemnity Ins. Co. of North America,* 257 N.C. 381, 126 S.E. 2d 161 (1962); *Fehl v. Aetna Casualty & Sur. Co.,* 260 N.C. 440, 133 S.E. 2d 68 (1963).

II

[2]   In the alternative, the trial court concluded that NCNB was "insufficiently aggressive" in its efforts to recover the automobile after Talley defaulted, that its efforts were ineffective to revoke the permission initially given him to operate the car, that its conduct signified assent to Talley's use of the car and, therefore, that Talley was driving the car on 12 April 1981 with NCNB's permission. The court further concluded that Nationwide, under the terms of the policy which it issued to NCNB, provided "voluntary coverage" to Talley.

Nationwide contends that these conclusions of law are likewise not supported by the facts found by the court. Again, we find ourselves in agreement with its contentions.

Nationwide's policy provided coverage to "any person while using an . . . automobile . . . with the permission of . . ." NCNB. As an owner's policy of motor vehicle liability insurance, the coverage provided by Nationwide's policy is extended by G.S. 20-279.21(b)(2) to include "any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured, or any other persons in lawful possession . . . ." Thus, in order for coverage to be extended, under the

terms of the policy and pursuant to G.S. 20-279.21, for Talley's negligent operation of NCNB's Chrysler, Talley must have had either express or implied permission to operate it, or he must have been in lawful possession of it.

As we have previously pointed out, Talley was not in lawful possession of the automobile. NCNB had declared the lease to be in default, demanded possession of the automobile and given Talley notice of its actions at his last known address as shown in the lease. Talley continued in possession and successfully avoided efforts to locate him or the automobile. His possession was violative of G.S. 20-106.1, G.S. 14-167 and G.S. 14-168.1.

According to the facts found by the trial court, NCNB employed an automobile recovery agency in an attempt to locate the car and contacted various of Talley's relatives and acquaintances in its attempts to locate him. Failing in its efforts, NCNB procured a warrant for Talley's arrest. Although the court found that NCNB did not notify the North Carolina, South Carolina or Georgia highway patrols, NCNB did notify the Winston-Salem Police Department. We do not believe it unreasonable for NCNB to rely on one law enforcement agency to seek the assistance of others. Certainly there were additional measures which NCNB could have taken to recover the car, however, we conclude that those which the court found were taken were not so perfunctory as to support its conclusion that NCNB was "insufficiently aggressive."

The trial court also found that at the time of the accident, the 1979 Chrysler displayed a 1981 license plate and Talley was in possession of a valid 1981 registration card showing NCNB as the owner. However, there was no evidence, nor was there any finding, as to how Talley came into possession of the license plate and registration, or that NCNB knowingly provided him with them. Absent such additional findings, the mere fact that Talley possessed the license and registration does not support the court's conclusion that NCNB acquiesced in, or did not object to, Talley's operation of the automobile. Moreover, we hold that NCNB's efforts to secure the return of its automobile and to locate and contact Talley were sufficient to constitute a revocation of its initial permission given Talley to operate the car.

Permission to use an automobile may be express, or may be implied from a course of conduct between the parties. *Bailey v.*

*General Ins. Co. of America, Inc.*, 265 N.C. 675, 144 S.E. 2d 898 (1965). However, the relationship between the owner and the user has a substantial bearing on the question of whether the owner has granted implied permission. *Id.* Talley's initial use of this automobile was permitted under the terms of a written lease and was subject to the terms thereof. Once he defaulted and failed to return the car as demanded by NCNB, his continued use was a material deviation from the permission granted in the lease. As such, it was not a permissive use within the meaning of the policy or G.S. 20-279.21(b)(2). *See Wilson v. Hartford Accident and Indem. Co.*, 272 N.C. 183, 158 S.E. 2d 1 (1967). Thus, Talley's operation of the automobile at the time of the collision with Land and Pruitt was not within the coverage provided by Nationwide's policy and the trial court erred in concluding that it was.

Notwithstanding the strong public policy of this State to provide financial protection to persons injured by the negligent operation of automobiles by financially irresponsible drivers, considerations of public policy are not unlimited. G.S. 20-279.21(b)(2) does not permit victims of accidents to recover from the owner of a motor vehicle, or his insurer, where the offending driver of the vehicle had neither permission to drive it nor lawful possession of it.

Reversed.

Judges ARNOLD and WELLS concur.