617 So.2d 1051 (1993)
The HERTZ CORPORATION, Petitioner,
v.
Billy JACKSON, etc., et al., Respondents.
No. 79251.
Supreme Court of Florida.
April 1, 1993.
Rehearing Denied May 24, 1993.
Steven A. Edelstein, Law Offices of Roland Gomez, Miami, for petitioner.
Arnold R. Ginsberg, Perse, P.A. & Ginsberg, P.A., and Jay Rothlein, Miami, for respondents.
OVERTON, Justice.
We have for review Jackson v. Hertz Corp., 590 So.2d 929 (Fla. 3d DCA 1991), in which the district court, on rehearing en banc, found that Hertz Corporation (Hertz) was liable under the dangerous instrumentality doctrine for damages caused by the driver of a Hertz-owned rental vehicle even though the vehicle had been obtained by fraud and reported as stolen. The district court certified the following question to this Court:
[W]hether the liability of a car rental company under the dangerous instrumentality doctrine is affected by the facts that (a) the rental was secured by fraud, (b) the period for which the vehicle was rented was greatly exceeded and/or (c) the car rental company made efforts to recover the vehicle after it became aware of the fraud and that the vehicle was not timely returned.
Id. at 942 (on rehearing en banc). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we answer the question in the affirmative, quash the district court's decision, and approve the trial court's decision.
*1052 The pertinent facts were set forth in the district court's opinion as follows:
On February 5, 1985, Hertz entered into a two-day rental agreement with a woman purporting to be Linda Major, and her companion, Lawrence King. The woman presented Hertz with a Visa credit card issued in Linda Major's name. Mr. King's driver's license number, the license expiration date, the issuing state, and King's age were entered on the additional authorized operator attachment of the rental agreement. Additionally, King's driver's license number and the license expiration date were entered on the front of the Hertz rental agreement. No separate driver's license information was written on the rental agreement for the woman identifying herself as Linda Major. Before relinquishing possession of the vehicle, Hertz ran a credit check on the Visa card presented. Upon receipt of a favorable credit check, Hertz released the vehicle to the above individuals.
Hertz was informed on February 17, 1985, by Metro-Dade Police that the Hertz-owned vehicle had been fraudulently leased with a stolen credit card and that the woman who gave her name as Linda Major was an impostor. Thereafter, on February 26, 1985, and March 1, 1985, respectively, Hertz sent certified letters[1] to both renters demanding the return of the automobile. On March 31, 1985, both letters were returned to Hertz as undeliverable. On April 5, 1985, Hertz reported the vehicle as stolen to the police. Eleven days after the Hertz vehicle was reported stolen, the vehicle, operated by Christopher Harris, an alleged participant in the fraud, was involved in an accident, injuring Billy Jackson.
[1] The Metro Dade Police Department Auto Theft Division requires that rental car companies send a certified letter to the renter of each vehicle before any vehicle can be reported as stolen.
Jackson, 590 So.2d at 930-31.
Based on these facts, Jackson and his mother sued Hertz under a theory of negligent entrustment on the grounds that Hertz's employees rented the vehicle to a person who did not present a valid driver's license, who obtained the vehicle by fraud, and who negligently operated the vehicle thus causing the accident. At trial, the jury became deadlocked on the issue of liability, and the trial judge directed a verdict in favor of Hertz. Id. at 931. The district court, in its original panel decision, affirmed the trial court, concluding that Hertz: (a) did not negligently entrust the vehicle; (b) did not delay in attempting to regain possession of the vehicle; and (c) was relieved of responsibility because, even if the vehicle was originally voluntarily entrusted by Hertz, a species of conversion or theft had occurred so as to relieve Hertz of vicarious responsibility under these facts.
On rehearing en banc, the district court, in a split decision, reversed the panel decision. The majority found Hertz to be liable as a matter of law under Florida's dangerous instrumentality doctrine for the negligent operation of its vehicle and concluded that the Jacksons were entitled to a directed verdict on the issue of liability.
In rendering its decision, the district court noted that Florida's unique dangerous instrumentality doctrine "imposes strict, vicarious responsibility upon the owner or other possessor of a motor vehicle who voluntarily entrusts it to another for any subsequent negligent operation which injures a member of the travelling public." Id. at 937 (on rehearing en banc). Accordingly, the district court determined that the dangerous instrumentality doctrine applied in this case because Hertz had clearly consented to the use of its vehicle by another. The district court rejected Hertz's claim that, because the vehicle had been obtained through a species of conversion or theft, it was insulated from liability under the doctrine. Instead, the district court concluded that "liability both arises and is complete when the owner consents to the use of the vehicle `beyond his [or her] own immediate control.'" Id. at 941 (quoting Susco Car Rental System v. Leonard, 112 So.2d 832, 835-36 (Fla. 1959)). The district court acknowledged, however, that its decision may be in conflict with our *1053 recent decision in Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla. 1991).
It appears that Florida is the only jurisdiction that imposes, under the common law dangerous instrumentality doctrine, strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts it to another. Susco; Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). Under this doctrine, an owner who gives authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated properly. Susco; Thomas v. Atlantic Associates, Inc., 226 So.2d 100 (Fla. 1969). However, limited exceptions to the strict liability imposed under the dangerous instrumentality doctrine have been recognized by this Court. For example, we have specifically held that: 1) one who leaves a vehicle with a repair service is not liable for injuries caused by the negligence of an employee of the repair service, Castillo v. Bickley, 363 So.2d 792 (Fla. 1978); and 2) a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for the negligence of one to whom the owner has granted consent to operate the vehicle, Susco, 112 So.2d at 835-36. The question in this case involves the second exception of whether a theft or conversion occurred under the circumstances of this case so as to relieve Hertz from liability.
Although we address the issue of whether a theft or conversion has occurred in this case in the context of a rental car company, it is important to recognize that the principle of strict liability imposed under the dangerous instrumentality doctrine also applies to individuals. Accordingly, under the district court's interpretation of the doctrine, individual vehicle owners would also be liable once they had consented to allow another to use their vehicle, even if the vehicle was initially obtained through misrepresentations and criminal fraud. Moreover, if we followed the district court's findings, once consent had been given "no ... efforts, even heroic ones, [could] be effective to obviate the owner's liability under the doctrine." Jackson, 590 So.2d at 941 (on rehearing en banc).
Clearly, in earlier cases courts have determined that no vicarious liability is imposed on the owner of a vehicle for the negligence of a driver when a vehicle has been obtained without the owner's consent. Commercial Carrier Corp. v. S.J.G. Corp., 409 So.2d 50 (Fla. 2d DCA 1981), review denied, 417 So.2d 328 (Fla. 1982); Martinez v. Hart, 270 So.2d 438 (Fla. 3d DCA 1972); Keller v. Florida Power & Light Co., 156 So.2d 775 (Fla. 3d DCA 1963). This is true even if the vehicle is left unattended and unlocked, with the keys in the ignition. Commercial Carrier. We do not believe, however, that the vicarious liability of an owner under the dangerous instrumentality doctrine should depend solely on the issue of whether there was consent to use the vehicle initially. Rather, consistent with our holding in Susco, we find that liability should be determined on the basis of whether there has, in fact, been a conversion or theft of the vehicle prior to the negligence at issue. We hold that once a vehicle has been the subject of a theft or conversion, the owner's initial consent has been vitiated and the vehicle is no longer on public highways "by authority of" the owner. Consequently, we overrule Tillman Chevrolet Co. v. Moore, 175 So.2d 794 (Fla. 1st DCA 1965), cert. discharged, 184 So.2d 175 (Fla. 1966), in which an automobile dealership was held liable for the negligence of a prospective buyer who converted the vehicle he had taken for a test drive. We emphasize, however, that procurement of a vehicle through fraud is but one factor to be considered in determining whether a vehicle has been the subject of theft or conversion.
Turning to the facts of the instant case, Hertz contends that a breach of custody amounting to a species of conversion or theft did occur under the circumstances of this case. We addressed a similar claim in our recent decision in Stupak. In that case, a vehicle had been rented under a long-term lease agreement. One day after the vehicle was to have been returned under the terms of the rental agreement, the *1054 vehicle was involved in an accident in which the plaintiffs in that case were injured. As in the instant case, the issue was whether the failure to timely return the vehicle constituted a breach of custody amounting to a species of conversion or theft so as to relieve the rental company of liability under the dangerous instrumentality doctrine. The only evidence before the court on the issue of theft involved conflicting terms contained within the rental agreement. The rental agreement provided that failure to return the vehicle by the due date would be considered "theft by conversion." Another portion of the contract, however, suggested that the rental company did not treat late returns as thefts or conversions for at least the first twenty-four hours after the expiration of the rental term. We concluded that there was, in fact, a genuine issue of a material fact to be tried as to whether there had been a conversion or theft of the vehicle, and we remanded the case for a determination of that factual issue. Under our holding in that case, if a conversion or theft had occurred, then the rental company would be relieved of responsibility for the use or misuse of the rental vehicle. Stupak, 585 So.2d at 284.
As illustrated by our decision in Stupak, the question of whether a vehicle has been the subject of a conversion or theft is a factual one that ordinarily is answered based on the distinct circumstances of each individual case. Unlike our decision in Stupak, in the instant case we find that the trial court entered its directed verdict upon unrefuted facts that supported a conclusion that a conversion or theft had occurred. Specifically, those facts reflect that: (1) the car was rented for two days and was never returned to Hertz; (2) twelve days after the car was rented, Hertz was informed it was rented by use of a stolen credit card; (3) Hertz attempted to recover the vehicle by forwarding certified mail notice to the renters in accordance with Metro-Dade Police rules; (4) after the certified mail notices were returned and two months after the car was rented, Hertz reported the car stolen; and (5) the accident occurred eleven days after the vehicle was reported stolen and almost two and one-half months after it was initially rented. Given these facts, we find that the vehicle was converted and that a theft had occurred.
Accordingly, for the reasons expressed, we answer the certified question in the affirmative, quash the decision of the district court, and remand with directions to affirm the judgment of the trial court.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., dissents with an opinion.
KOGAN, Justice, dissenting.
I respectfully dissent for the reasons stated by Justice Barkett and myself in our separate opinions in High v. Westinghouse Electric Corp., 610 So.2d 1259, 1263-64 (Fla. 1992) (Barkett, J., & Kogan, J., concurring in part, dissenting in part). To my mind, a company renting cars for profit is little different than any other company placing a potentially dangerous instrumentality into the stream of commerce. It is entirely foreseeable that someone renting such a car may convert it for an improper use, thereby injuring a third party. That being the case, I believe the better policy is to require the for-profit enterprise to bear the burden of the injury rather than the innocent third party. I further would confine this holding to for-profit rentals of cars. I would reserve judgment on whether the dangerous instrumentality doctrine would impose similar liability on one who merely loans a car for another to use, but without any profit motive.