953 P.2d 178

**RYDER TRUCK RENTAL, INC., and Old Republic Insurance Company, Plaintiffs–Appellees,**

v.

**Ada N. RODRIGUEZ, Defendant–Appellant.**

**No. 1 CA–CV 97–0167.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 27, 1998.

Frederick C. Berry, Jr., P.C. by Frederick C. Berry, Jr., Phoenix, for Defendant–Appellant.

Clark & Associates by A. James Clark, Alicia A. Hedelund, Yuma, for Plaintiffs–Appellees.

NOYES, Judge.

¶ 1 Ada N. Rodriguez was hit by a truck that was owned by Ryder Truck Rental, Inc., insured by Old Republic Insurance Company, and rented to a person who paid with a bad check and kept the vehicle past its due date. Ryder and Old Republic filed this action, seeking a judgment declaring that their insurance did not cover Rodriguez' claim because the renter was a thief. The trial court granted summary judgment to Ryder and Old Republic. Rodriguez appealed. We reverse and remand because the record is too ambiguous at this point to support summary judgment for anyone.

¶ 2 Our jurisdiction of the appeal is pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994). We review the facts in a light most favorable to the party against whom summary judgment was granted, and we review the questions of law de novo. Pioneer Annuity Life Ins. Co. v. Rich, 179 Ariz. 462, 464, 880 P.2d 682, 684 (App.1994).

¶ 3 On January 16, 1996, Howard Herndon rented a Ryder truck for one day. He used his real name and gave a $200 deposit check. The rental agreement provided that liability coverage did not exist "if the Vehicle is obtained, used or operated in violation of any provision of this Agreement...." On January 19, Ryder learned that the bank had dishonored the deposit check because the account had been closed. On January 22, a person driving the truck with Herndon's permission hit Rodriguez' vehicle. Also on January 22, at a time not in the record, a Ryder employee "filed a stolen vehicle report with Ryder." On January 25, Ryder wrote Herndon a letter demanding immediate return of the truck. Three weeks later, the truck was anonymously returned.

¶ 4 The rented truck in this case meets the requirements of A.R.S. section 28–324, which provides as follows:

A. No owner engaged in the business of renting ... a motor vehicle without a driver shall be permitted to register the motor vehicle until he has procured public liability insurance with an insurance company ... insuring the renter thereof against liability arising from his negligence in the operation of the rented motor vehicle....

A.R.S. § 28–324(A) (Supp.1997). (Title 28 was amended effective October 1, 1997, and January 1, 1998. A.R.S. section 28–324(A) is now at A.R.S. section 28–2166(A) and (B) (Special Pamphlet 1997).)

¶ 5 The question is whether Herndon was a "renter" within the meaning of section 28–324 when Rodriguez was injured.

If so, then Ryder's insurance covers her claim. (The person driving the truck when Rodriguez was injured had Herndon's permission. Section 28–324(G)(2) (current version at § 28–2166(I) (Special Pamphlet 1997)) provides that " 'Renter' includes any person operating a motor vehicle with permission of the person who has rented it.")

■ ¶ 6 Ryder argues that Herndon obtained the vehicle by fraud and so was a thief rather than a renter. We conclude that the fact that Herndon obtained the vehicle by fraud does not necessarily exclude him from being a renter within the meaning of section 28–324. The injury-causing vehicle was on the road because Ryder rented it to Herndon. To allow Ryder to avoid financial responsibility for the vehicle solely on a hindsight analysis of the behavior of the renter would too easily defeat the purpose of section 28–324.

■ ¶ 7 In enacting A.R.S. section 28–324, the "legislature's *primary* concern ... was to ensure at least minimum protection for innocent third parties." *Consolidated Enters., Inc. v. Schwindt*, 172 Ariz. 35, 40, 833 P.2d 706, 711 (1992) (holding that a rental agency may not sue a renter to recover payments made to a person injured by a nonauthorized use of the vehicle); *see also Lowry v. Tucson Diesel, Inc.*, 17 Ariz.App. 348, 350, 498 P.2d 160, 162 (1972) (stating that section 28–324 seeks to protect the public from possible economic hardship caused by irresponsible renters).

¶ 8 On the other hand, section 28–324 does not manifest a legislative intention to hold agencies strictly liable for any damage done by a vehicle whose renter turned out to be a thief. Interpretation of section 28–324 thus requires finding the point at which an agency is relieved of financial responsibility in such a situation. No Arizona case addresses this issue. To highlight the competing policy considerations the issue raises, we discuss a Florida case that was decided differently at each step of a three-step appellate process.

¶ 9 In *Hertz Corp. v. Jackson*, 617 So.2d 1051 (Fla.1993), a vehicle was rented for two days. Twelve days later, Hertz learned that the vehicle had been rented with a stolen credit card. Hertz then sent certified letters to the renters demanding return of the vehicle. The letters were returned undeliverable. About two months later, Hertz reported the vehicle stolen. Eleven days after that, the vehicle was in an accident.

¶ 10 A panel of the court of appeals affirmed a judgment in favor of Hertz, reasoning that Hertz was not financially responsible because the vehicle was procured by fraud and "[t]his fraud vitiated Hertz's consent from the outset." *Jackson By and Through Whitaker v. Hertz*, 590 So.2d 929, 932 (Fla. App.1990). On rehearing en banc, however, the court reversed that judgment and held Hertz liable as a matter of law, reasoning,

It would fatally compromise the interests of the innocent public if a rent-a-car agency ... which (a) is in the very business of leasing cars for a profit, (b) has extensive and elaborate means to safeguard itself against fraud or other misconduct and (c) is certainly "in the best position to make certain that there will be adequate resources" to pay damages caused by its vehicle, can avoid that liability if it is given a bad check, a counterfeit bill or a fraudulent driver's license—all of which involve violations of the criminal law, but none of which should affect the owner's tort liability for its automobile.

*Id.* at 939 (citations and footnotes omitted). The en banc court declined to discuss Hertz's efforts to reclaim the vehicle, stating that "*no such efforts, even heroic ones, can be effective to obviate the owner's liability under [Florida's 'dangerous instrumentalities'] doctrine.*" *Id.* at 941.

¶ 11 The Florida Supreme Court then quashed the en banc decision of the court of appeals and affirmed the trial court's judgment for Hertz, reasoning,

[L]iability should be determined on the basis of whether there has, in fact, been a conversion or theft of the vehicle prior to the negligence at issue.... [O]nce a vehicle has been the subject of a theft or conversion, the owner's initial consent has been vitiated and the vehicle is no longer

on public highways "by authority of" the owner.

*Hertz,* 617 So.2d at 1053.

 ¶ 12 The supreme court also stated, "We emphasize, however, that procurement of a vehicle through fraud is but one factor to be considered in determining whether a vehicle has been the subject of theft or conversion." *Id.* The supreme court reviewed the undisputed facts—including the facts that Hertz attempted to recover the vehicle and reported it stolen—and the court concluded, "Given these facts, we find that the vehicle was converted and that a theft had occurred." *Id.* at 1054.

¶ 13 We agree with the analysis by the Florida Supreme Court in *Hertz,* and with the suggestion that a rental agency intending to revoke a renter's permission to use the vehicle should make a reasonable effort to cancel the contract and recover the vehicle. This approach furthers the public-protection policy of A.R.S. section 28–324 without making a rental agency strictly liable for renters who turn out to be thieves.

¶ 14 To illustrate the proposition that a rental agency should take reasonable action to revoke the consent given to a renter who is suspected of being a thief, we discuss some cases that considered agency efforts to cancel the contract and recover the vehicle. *In re Utica Mutual Insurance Co.,* 95 A.D.2d 150, 465 N.Y.S.2d 553 (1983), involved a one-day rental. When the vehicle was two days overdue, the agency's manager sent letters to the renter by certified mail, telephoned the renter's relatives, contacted police in New York and New Jersey, and drove to New Jersey looking for the vehicle. Seven days later, the agency filed a criminal complaint against the renter. Four days later, the vehicle was in an accident. *Utica,* 465 N.Y.S.2d at 554. The court found that the agency's efforts to recover the vehicle "were sufficient to constitute a revocation of its consent to the lessee to operate the vehicle." *Id.* at 555.

¶ 15 In *Nationwide Mutual Insurance Co. v. Land,* 78 N.C.App. 342, 337 S.E.2d 180 (1985), *aff'd,* 318 N.C. 551, 350 S.E.2d 500 (1986), a vehicle lessee made payments for four months, then quit. The lessor then tried to find the vehicle, and it contacted the Automobile Recovery Bureau for assistance. The lessor sent the lessee a default letter demanding full payment and surrender of the vehicle. The lessor contacted the lessee's ex-wife, and others, trying to find him. About six months later, the lessor had a warrant issued for the lessee's arrest. About eight months later, the lessee had an accident driving the vehicle. *Id.,* 337 S.E.2d at 182. The court determined that the lessee's "continued possession of the automobile, after [the lessor] had given him notice that he was in default and demanded possession of the automobile, ... amounted to a conversion of the automobile." *Id.* at 184.

 ¶ 16 In line with the above-discussed cases, we hold that a person who rents a vehicle from an agency is a "renter" within the meaning of A.R.S. section 28–324 unless the agency proves that, prior to plaintiff's injury, (1) the renter converted or stole the vehicle, and (2) the agency made a reasonable effort to cancel the rental contract and recover the vehicle. These elements must be proved by a preponderance of the evidence. *See Almadova v. State Farm Mut. Auto. Ins. Co.,* 133 Ariz. 81, 86, 649 P.2d 284, 289 (1982) (stating that renter's criminal intent must be proved by a preponderance of the evidence).

 ¶ 17 Whether a rental agency has acted reasonably to cancel the contract and recover the vehicle will depend on the facts and circumstances of the individual case. Acting reasonably in such circumstances means acting with due diligence. Due diligence involves making the effort that a person would reasonably make if trying to accomplish the desired result. *See, e.g., Pioneer Fed. Sav. Bank v. Driver,* 166 Ariz. 585, 589, 804 P.2d 118, 122 (App.1990) (finding that due diligence required that plaintiff seeking to serve process on absentee defendant use "means ... such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)); Black's Law Dictionary 457 (6th ed.1990) (defining "due diligence" as "[s]uch a measure of pru-

dence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case").

¶ 18 We now discuss the facts in this record. In granting summary judgment to Ryder and Old Republic, the trial court stated, "The vehicle was obtained by a fraudulent deposit of a $200.00 check on a closed account. It was kept for 27 days in excess of the one-day rental agreement. Furthermore, Ryder took all proper steps to cancel the contract when the vehicle was not returned in a prompt fashion." The first sentence is accurate but does not by itself warrant summary judgment. *See Hertz,* 617 So.2d at 1053. The second sentence is accurate but immaterial: Rodriguez was not injured when the vehicle was twenty-seven days overdue; she was injured when it was five days overdue. The third sentence is immaterial to the extent that it credits Ryder's post-accident efforts to cancel the contract and recover the vehicle, and the record does not reflect what, if any, efforts Ryder made in that regard before Rodriguez was injured.

¶ 19 We conclude that this record is too ambiguous to declare as a matter of law that Herndon was or was not a "renter" within the meaning of A.R.S. section 28–324 at the time Rodriguez was injured. Accordingly, the judgment for Ryder and Old Republic is reversed, and the case is remanded for further proceedings.

¶ 20 All parties requested attorneys' fees if they prevailed on appeal. Rodriguez has now prevailed, and the appeal required resolution of an important question of law concerning A.R.S. section 28–324. We therefore award reasonable attorneys' fees to Rodriguez, even though the case continues in the trial court. *See Barmat v. John & Jane Doe Partners A–D,* 155 Ariz. 519, 521, 747 P.2d 1218, 1220 (1987); *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985).

LANKFORD, P.J., and GARBARINO, J., concur.